UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------
UNITED STATES OF AMERICA,

    -against-

DIMITRY ARONSHTEIN,

                                Defendant.
------------------------------------x

MEMORANDUM DECISION
AND ORDER

11 Crim. 121-2 (GBD)

GEORGE B. DANIELS, United States District Judge:

Defendant Dimitry Aronshtein moves for compassionate release, pursuant to 18 U.S.C. § 3582(c)(1)(A). (*See* Letter dated April 21, 2020 ("Def. Letter I"), ECF No. 547; Letter dated April 28, 2020 ("Def. Letter II"), ECF No. 552; Letter dated May 7, 2020 ("Def. Letter III"), ECF 556.) The Government opposes that motion. (*See* Letter dated May 8, 2020 ("Govt Letter").)[1] Defendant argues that his "particular vulnerability to complications from COVID-19 and the institution's inability to treat his conditions" present "extraordinary and compelling" justification for immediate release. (Def. Letter I at 6.) Defendant's motion is DENIED.

## I. BACKGROUND

Defendant's sentence arises from his participation in a massive kickback and fraud scheme that targeted a New York City initiative to modernize the payroll system for City employees. (*See* April 28, 2014 Sentencing Tr. at 74:20-22.) Evidence at trial established that one of Defendant's co-defendants, Mark Mazer, arranged for Defendant's staffing company to be hired to provide consultants on the project, and Defendant paid Mazer millions of dollars out of the profits his

---

[1] The Government filed this submission and exhibits under seal because they discuss the Defendant's private medical history.

company received. (*See* Memorandum Decision and Order, ECF No. 540 at 2-3.) After trial, Defendant and two co-defendants were convicted of various charges. Defendant Aronshtein was convicted of all charges brought against him: conspiracy to commit federal programs bribery, bribery, conspiracy to violate the Travel Act, and conspiracy to commit money laundering. (*See* J. in a Criminal Case, ECF No. 364.) On April 28, 2014, this Court sentenced each of the three defendants to an aggregate term of 20 years' imprisonment for their involvement in "the largest city corruption scandal in decades." (*Id.*; April 28, 2014 Sentencing Tr. at 74:22-23.)

Defendant has served six years of his sentence and is incarcerated at FCI Fort Dix. According to the Federal Bureau of Prisons ("BOP"), there are currently 2,835 inmates at the facility, with 22 confirmed active cases of COVID-19. FCI Fort Dix BOP Website, https://www.bop.gov/locations/institutions/ftd/) (last visited June 1, 2020); COVID-19 Cases BOP Website, https://www.bop.gov/coronavirus/) (last visited June 1, 2020).

Defendant contends that he is particularly vulnerable to serious illness from COVID-19, in part, because he has a history of coronary artery disease. (*See* Def. Letter I at 3.) In 2012 and 2013, Defendant was examined by a doctor while Defendant was on vacation in Florida. (Def. Letter II, Exhibit 1 at 1.) On both occasions, Defendant was diagnosed with congestive heart failure and high blood pressure, among other conditions. (*Id.*) Since his incarceration, Defendant has been examined by nearly a dozen different medical practitioners, but has not been diagnosed with coronary disease. (*See* Govt Letter at 4; Reply letter dated May 18, 2020 ("Def. Reply"), ECF No. 562 at 13.) However, in March 2020, Defendant saw a cardiologist who recommended that Defendant undergo a CT Coronary Angiogram ("CTCA") because he was experiencing chest pain and has a family history of coronary artery disease. (*See* Govt Letter, Exhibit B at 9-10, 125; Def. Reply at 13.) Though Defendant initially refused, he later agreed to the CTCA exam, which

has been requested but not yet occurred. (*See* Govt Letter, Exhibit B at 9-10, 125; Def. Reply at 13.) Defendant also reports that he suffers from dizziness and fainting, along with shortness of breath that has intensified in the last few months. (Def. Letter I at 3.) In particular, Defendant notes that he has fainted multiple times recently. (*Id.*; Def. Letter II at 1.) Defendant is receiving medical care in connection with these symptoms and undergoing further evaluation. (*See* Govt Letter, Exhibit B at 9; Def. Letter I at 2-3.) Finally, Defendant also indicates that he has asthma and was provided with an inhaler, which has not alleviated his symptoms. (Def. Letter I at 3-4; Def. Letter II at 1.)

## II. LEGAL STANDARD

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) allows a court to reduce a term of imprisonment (and impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after assessing the factors set forth in Section 3553(a), it finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A). However, a court may do so only "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.* Further, any such reduction must also be "consistent with applicable policy statements issued by the Sentencing Commission." *Id.* Specifically, the Application Notes to United States Sentencing Guidelines ("U.S.S.G.") § 1B1.13 outline three sets of circumstances that qualify as "extraordinary and compelling reasons," which broadly relate to the defendant's medical condition, age and family circumstances. U.S.S.G. § 1B1.13, Appl. Note 1(A)-(C). The Application Notes also provide a

catchall condition for "an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* § 1B1.13, Appl. Note 1(D). Additionally, the defendant must not be "a danger to the safety of any other person or to the community." *Id.* § 1B1.13(2).

## III. DEFENDANT HAS NOT ESTABLISHED AN EXTRAORDINARY AND COMPELLING REASON FOR HIS RELEASE.

Defendant bears the burden of proving that "extraordinary and compelling reasons" exist under 18 U.S.C. § 3582(c)(1)(A) to justify release. *See United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("If the defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant that decrease"). Here, Defendant relies on the catchall provision in the Application Notes to U.S.S.G. § 1B1.13 and argues that the spread of COVID-19, combined with his medical vulnerabilities and the living conditions at FCI Fort Dix, constitute extraordinary and compelling circumstances for his release. (*See* Def. Reply at 3.) Defendant's submissions include letters from his Florida doctor that explain that individuals who have cardiac and pulmonary conditions are most likely to develop life-threatening complications from COVID-19. (*See* Def. Letter II, Exhibit 1 at 2-3; Def. Reply, Exhibit 1 at 2.) Additionally, according to the CDC, individuals with "chronic lung disease or moderate to severe asthma" or "serious heart conditions," particularly if not well controlled, are at high risk-for severe illness from COVID-19. *See* Centers for Disease Control and Prevention, *Coronavirus Disease 2019 (COVID-19) – People Who Are at Higher Risk for Severe Illness*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last visited June 1, 2020). Despite Defendant's symptoms and medical history, Defendant's records show that his medical evaluation is ongoing. Further, there is no evidence that any cardiac conditions, if confirmed, could not be effectively controlled or treated to reduce any vulnerability Defendant may have to COVID-19. And though

4

Defendant contends that his asthma is not controlled by the inhaler provided, there is no evidence that such asthma is "moderate to severe."

Moreover, Defendant's generalized arguments regarding his living conditions and the prison's inability to protect inmates and staff from COVID-19 are not persuasive. In support of his argument, Defendant primarily points to his shared living space at FCI Fort Dix. (Def. Letter I at 4.) Defendant is incarcerated in "bunk bed style quarters" and shares a room with twelve people. (*Id.*) He argues that living in this environment does not allow him to socially distance. (*Id.*) Defendant's inability to effectively socially distance in this setting, alone, is hardly an "extraordinary" circumstance. Defendant also contends, without support, that there are few supplies and "not enough staff, much less trained staff, to support inmates who are ill and have acute bouts with their illness, much less to protect them or each other from this epidemic." (Def. Letter II at 1.) He further claims that testing for COVID-19 at FCI Fort Dix is insufficient. (Def. Letter I at 2; Def. Reply at 6-7.) The Government disputes this characterization, arguing that FCI Fort Dix regularly tests individuals that are symptomatic. (Govt Letter at 6.) Moreover, as Defendant acknowledges, the prison regularly conducts temperature checks of inmates. (*See* Def. Reply at 7.) FCI Fort Dix has certainly not been immune to COVID-19, and this Court acknowledges that another court is considering serious allegations regarding the living conditions at FCI Fort Dix. (*See* Def. Letter III.) However, Defendant has not met his burden on this motion.

The 3553(a) sentencing factors in this case do not provide support for Defendant's position and, in fact, counsel against his release. As this Court recognized at sentencing, "the significant and notorious criminal conduct in this case warrants substantial sentences for each defendant." (April 28, 2014 Sentencing Tr. at 74.) The defendants went to great lengths to plan, execute and conceal their crimes and "[a]ny argument that they could have believed that their conduct was in

5

any way proper is belied by the deceit and lies that were necessary to ensure the success of their criminal venture." (*Id.* at 74-75.) Further, this Court found that the defendants "demonstrated a lack of remorse" and "a lack of any real acceptance of responsibility." (*Id.* at 76.) Simply put, releasing Defendant after he has served just six years of a twenty-year sentence would not achieve the purposes of sentencing, including the need to reflect the seriousness of the offense and the need for specific and general deterrence.

Defendant's motion for compassionate release is DENIED.

Dated: June 1, 2020
      New York, New York

SO ORDERED.

*[signature]*
GEORGE B. DANIELS
United States District Judge